# Warren, *et al.* v. Lawson.

*Bill in Equity to Establish Payment and Satisfaction of
Mortgage.*

| 117 | 339 |
|-----|-----|
| 117 | 479 |

| 117 | 339 |
|-----|-----|
| 123 | 682 |

| 117 | 339 |
|-----|-----|
| 139 | 201 |

1.   *Chancery pleading; how exceptions reserved to registers's report.*
Rule 93 of Chancery Practice, (Code of 1886, p. 827; Code of 1896,
Rule 94, p. 1222), requiring a solicitor filing exceptions to the
report of the register to note at the foot of each exception the evi-
dence relied on by him to support it, is not complied with if the note
at the foot of the exception refers to the entire mass of the testi-
mony introduced by the party excepting, covering the whole field of
litigation, and embracing matters and questions having no relevancy
to the particular matter of the exception; and when an exception is
thus made, the chancellor is under no obligation to make an investi-
gation, nor will the appellate court review the finding.

2.   *Same; register's ruling on questions of fact.*—On questions and
matters of account depending upon the conclusions drawn by the
register from the evidence before him, all reasonable presumptions
are indulged to support his rulings; and the chancellor's ruling on
exceptions to the register's report sustaining his conclusions as to
facts dependent on the evidence produced before him, will not be
disturbed on appeal, unless such conclusions are clearly wrong and
erroneous.

APPEAL from the City Court of Montgomery, in
Equity.

[Warren *et at.* v. Lawson.]

Heard before the Hon. JOHN G. WINTER.

The facts of the case are sufficiently stated in the opinion.

THOS. H. WATTS, for appellant.

TOMPKINS & TROY, *contra.*—The finding of the matter on facts should not be disturbed, unless based on illegal evidence, or erroneous conclusions of law, or unless it is manifest that he erred in weighing the testimony. *Munden v. Bailey,* 70 Ala. 63 ; *Vaughan v. Smith,* 69 Ala. 92 ; *Glover v. Hembree,* 82 Ala. 324.

HEAD, J.—The bill was filed by Lawson against Warren and others to establish the payment and satisfaction of certain mortgages executed by him to secure the purchase money of certain lands, and the farm stock and certain supplies thereon, purchased by Lawson from Warren ; or to redeem, if it should be found that any part of the indebtedness remained unpaid. Under decree, an account was stated by the register involving many items, and transactions between the parties, which ascertained a balance of $2.20 only against the complainant, and the register's report was confirmed by the chancellor—the exceptions filed thereto by the respondents being overruled. The case comes before us from that ruling.

The controversy had its origin in the sale by Warren to Lawson, the complainant, in 1875, of certain interests in real and personal property, at the price of $4,500, for which three notes were given, maturing, respectively, in December 1875, 1876 and 1877. One of the notes and a part of another being paid, on December 30, 1880, a deed was executed to Lawson and new notes given by him to Warren for something over $4,700, the amount supposed to be the balance then due, with a mortgage on the property to secure him. The parties, however, are in dispute as to whether this sum did not include an outside account for over $200, contracted by Lawson with Warren. It is charged that usury entered into these notes. The notes were discounted by Warren with banks, and sundry payments were afterwards made thereon. In January, 1881, Lawson desired to obtain

advances from Warren to enable him to carry on his farming operations for that year, and to that end he executed to Warren his note for $6,000, reciting that it was given for such advances; but which, as the parties agree in their testimony, was really given to cover the balance due on the land notes, as well as the advances to be made. The parties are in dispute as to the amount of advances agreed to be made. This $6,000 note was secured by a mortgage on the crops for that year, and nineteen mules and other personal property. Large advances were made during the pear, composed of many transactions, and numerous payments were made. There was some machinery of some kind on Lawson's place, upon which Lehman, Durr & Co. held a mortgage which they foreclosed in 1881, and Warren paid to them $539.75, the amount due on their mortgage debt, and charged same to Lawson, claiming that the payment was made at Lawson's request and as an advance under the $6,000 mortgage, while, on the contrary, Lawson claims that Warren purchased the machinery, at the mortgage sale, on his own account, and that it became his property, and that the amount paid was no proper charge against him. Their testimony is in conflict on this point. In the fall of 1881, Warren, who, it seems, was carrying on mercantile business of some unexplained character, on his own account, but under the firm name of Warren & Co., took one Amerine in partnership with him, and thereafter the business was conducted by that partnership, under the same name. Advances were made to Lawson in 1882, and, as claimed by Warren, for each year up to 1887, while Lawson claims that for some of the years the advances were made to his tenants, and not to him, or on his account. He, Lawson, became a clerk for the firm, in 1883, on a salary, and continued as such for several years. There were charges and counter charges, covering many items of debit and credit, for advances claimed to have been made to Lawson, and payments made by him and by his tenants, in various ways. The mules included in the $6,000 mortgage were, in December, 1882, taken by Warren at an agreed price of $1,700, and there is dispute as to the application of this money, and conflicting testimony in regard to it. There is decided conflict as to how large sums, collected by the book-keeper of War-

ren & Co., at the request of Lawson, from his tenants, in the winter of 1884-85, while Lawson was engaged in his public duties as a member of the legislature, and which were credited generally to Lawson on the books of Warren & Co., should be applied. Other matters of difference might be mentioned, but these will illustrate the wide scope of the investigation and the undertaking of the register when he entered upon the statement of the account. The evidence consisted entirely of the oral testimony of Lawson, Warren, Dennis, the book-keeper of Warren and Warren & Co., and the documentary and book-account evidence they produced. It occupies some forty pages of the type-written transcript, introducing extended extracts from the books of accounts, and covers the whole field of dispute. The testimony of Warren and Dennis, and the book-accounts produced by them, cover the whole field from the standpoint of the respondents, and embrace every matter about which evidence was necessary to them, either to establish, rebut or explain, whether the matter be the subject of an exception to the register's report or not.

In this condition of the record, the exceptions to the register's report, which may be regarded of any importance, in attempting to comply with Rule 93 of Chancery Practice, each, referred the chancellor, in support of the exception, to the entire evidence of Warren and Dennis, and the ledger accounts they produced, requiring him to go through the whole mass of this testimony, on each exception, whether relevant or irrelevant to the particular exception under review, and thereby determine, upon conflicting oral testimony, the true state of the accounts of the parties. By some of the exceptions, the chancellor was, and this court, as a revising tribunal, is now requested, practically, to state the entire account, and determine the true result. Rule 93 requires the solicitor filing exceptions to note at the foot of each exception the evidence, or parts of evidence he relies on in support of the exception, with such designation and marks of reference, as to direct the attention of the court to the same. This rule is, in substance, no more than was required by the general practice before. There is a very plain statement of what that practice requires in the case of *Mahone v. Williams*, 39 Ala. 202, which we earnestly commend to the attention and observance of

the profession. We there quoted what Chief Justice MARSHALL and Judge STORY said on the subject many years ago. Judge MARSHALL said: "It is not the province of a court to investigate items of an account. The report of a master is received as true, when no exception is taken; and the exceptions are to be regarded only so far as they are supported by special statements of the master, or by evidence which ought to be brought before the court by reference to the particular testimony on which the exceptor relies. Were it otherwise—were the court to look into the immense mass of testimony laid before the commissioner—the reference to him would be of little avail. Such testimony, indeed, need not be reported, farther than it is relied on to support, explain, or oppose a particular exception.—*Harding v. Handy*, *supra*, [11 Wheaton 126.] Judge STORY, in *Donnell v. Col. Ins. Co.*, *supra*, [2 Semms 371], remarked: 'When exceptions are taken, the evidence, which furnishes the ground of the exception, should be required by the party excepting to be stated by the master; for, otherwise, the court will not wander at large into the evidence, in order to ascertain whether by possibility the master was wrong in his conclusion or not.' And it is held in *Story v. Livingston*, (13 Peters, 366), that 'exceptions to a master's report must state, article by article, the parts of the report which are intended to be excepted to.' " And this court said: "If the chancellor indulges the conjecture that the register decided in reference to all the evidence pertaining to the matters of inquiry, which was taken before the hearing and which was taken upon the reference before him, then he must take up, one by one, the vast number of questions and look through the transcript, and select from the numerous depositions the different parcels of testimony bearing upon the different questions as he takes them up, and make up the best decision he can. * * * * The object of a reference to the register is to aid the chancellor. But the reference certainly can neither enlighten him, nor facilitate his labors, if he is left, as in this case, to consider all the questions as original propositions, and search through the file for the evidence bearing upon them. Indeed, it would have been obviously better for him to have had no reference and to have required the parties to come before him and produce the testimony bearing upon the different items."

[Vandeford *et al.* v. Stovall.]

It is certainly no compliance with the rule to refer, by the required note to the exception, to the entire mass of testimony introduced by the party excepting, covering the whole field of the litigation and embracing matters and questions having no relevancy to the particular matter of the exception. Such was the nature of the practice pursued in this case, and we hold that the chancellor was under no obligation to make the investigation; nor is this court.

We, have, however, in this case, carefully read and re-read the testimony, and find that the several matters of exception were determined by the register either upon conflicting evidence of apparently equal credibility, fully justifying his decisions, or upon undisputed evidence in favor of his ruling. In such case, his findings can not be disturbed. Registers' findings of fact can not be set aside unless they are clearly wrong.—*Glover v. Hembree*, 82 Ala. 324, and authorities collated in 3 Brick. Dig. 397, § 488.

Affirmed.