139  183
139  405
139  183
141  641
139  183
144  475

</div>

# Pollard *et al. v.* American Freehold Land Mortgage Co. of London, Limited
### and
# American Freehold Land Mortgage Co. of London. Limited *v.* Pollard *et al.*

*Bill in Equity to compel Affirmance or Disaffirmance
of Mortgage Sale; and Cross Bill by Mortga-
gor to disaffirm and to be let in to redeem.*

1. *Equity practice; review of decree confirming register's report.*
   On an appeal from a decree in chancery confirming the report
   of the register on questions of fact as made by him upon evi-
   dence which was largely oral, all reasonable presumptions
   will be indulged in favor of the register's decision upon the
   questions of fact; and the appellate court will not reverse a
   decree confirming said report, unless clearly satisfied that the
   register's conclusion was erroneous. In such case, the regis-
   ter's decision upon the facts has the force and effect of a ver-
   dict of the jury, and a decree confirming it will not be re-
   versed, unless the facts would require the trial court to grant
   a motion to set aside the verdict of the jury and to have a
   new trial.

2. *Redemption of land by mortgagor; liability of mortgagee in
   possession for waste.*—While a mortgagee in possession is not

[Pollard *et al.* v. Am. Freehold Land Mgt. Co. of London, Ltd., and Am. Freehold Land Mgt. Co. of London, Ltd. v. Pollard *et al.*]

liable for waste committed by a tenant to whom he has merely rented the land, where, however, such mortgagee attempts to sell the land and puts the purchaser in possession, upon the subsequent redemption of the land by the mortgagor, said mortgagee is liable for waste committed by the purchaser while occupying the land under a contract of sale made with the mortgagee.

3. *Same; same; when allowed, although not claimed in bill.* While, abstractly speaking, a mortgagor seeking to redeem lands from a mortgagee in possession, is not entitled to credit for waste, when in his bill or cross bill he fails to claim damages on that account, if, however, the mortgagor's claim on account of waste is, throughout the litigation, treated as being properly in the case, and is one of the matters litigated, and in the decrees of reference for an accounting the register is directed to allow the mortgagor damages for any waste that the evidence may show had been committed, and in obedience to this decree the register allows damages for waste, which is confirmed by a decree of the court, and such allowance is not challenged in the court below upon any other ground than that the evidence did not show that any damage resulted from the acts complained of as waste, it will be considered on appeal that the mortgagee waived the failure of the mortgagor to claim the damages in his bill or cross bill, and the objection to the mortgagor's failure to aver waste comes too late and will not be considered.

4. *Redemption by mortgagor from mortgagee in possession; allowance of attorney's fees.*—In a bill filed by a mortgagee who became the purchaser at the foreclosure sale, without authority being given therefor in the mortgage, to compel the mortgagor to affirm or disaffirm said sale, and in the event of its disaffirmance seeking to have the mortgage foreclosed, where the mortgagee asks for the allowance of attorney's fees, as stipulated for in the mortgage, and the mortgagor, by cross bill, seeks to redeem from the mortgagee in possession, and the allowance of attorney's fees to the complainant in the original bill is one of the issues in the case, and in the reference before the register under orders of the court, there was evidence introduced as to the value of the services performed by the complainant's counsel, and in his report, which was confirmed, the register made an allowance of counsel fees, that portion of the decree of the chancellor confirming the allowance made by the register, will be affirmed on appeal, unless it is plain and

clear to the appellate court that the allowance was incorrect in amount.

5. *Same: same.*—In such a case, although the evidence shows that the complainant mortgagee paid its counsel in advance for services rendered, the mortgagee would not be entitled to interest upon the attorney's fee so paid, from the time of payment to the time of the rendition of the decree confirming the register's report allowing said fee.

6. *Redemption by mortgagor from mortgagee in possession; to what interest on taxes paid mortgagee entitled.*—Upon the redemption by a mortgagor from a mortgagee in possession, where it is shown that the mortgagee paid the taxes upon the property for each of the several years it was in possession thereof, such mortgagee should be allowed interest on the several sums expended for taxes, from the dates of such payments, respectively, to the times at which they were applied in reduction of the rent charge for the current year.

7. *Same: mortgagee not entitled to credit for taxes paid by its vendee.*—Where a mortgagee who purchases at its foreclosure sale, without being authorized thereto by the mortgage, subsequently makes a contract of sale of the lands so purchased, in which it is stipulated that its vendee should keep the taxes on the lands paid up while in possession thereof, upon a subsequent disaffirmance of the sale and the redemption of the lands by the mortgagor, the mortgagee is not entitled to credit for the taxes paid by its said vendee.

8. *Same; mortgagee not entitled to commissions paid to agent for renting land.*—Where a corporation, which is a mortgagee, sells the lands conveyed in the mortgage under the power of sale contained therein, and, without authority given, becomes the purchaser, and subsequently rents out said lands as a whole to one tenant, upon the redemption of said lands by the mortgagor from the mortgagee, the latter is not entitled to be credited with the commissions paid by it to an agent for renting out said lands to its tenant or collecting the rent from such tenant.

9. *Redemption by mortgagor from mortgagee in possession; proper mode of renting property.*—A corporation, which was a mortgagee, sold lands under the power of sale contained therein and became the purchaser at such sale, without being given authority in the mortgage so to do. The lands so mortgaged and sold constituted a very large plantation. Subsequently there was a disaffirmance of the sale and the mortgagor sought to redeem from the mortgagee in possession. Upon the question as to the proper mode of renting the property,

[Pollard *et al.* v. Am. Freehold Land Mgt. Co. of London, Ltd., and Am. Freehold Land Mgt. Co. of London, Ltd. v. Pollard *et al.*]

the evidence showed that there was in vogue with ordinarily prudent and diligent owners of large tracts of land in the country where the said plantation was situated a custom of letting a plantation in parcels to farm laborers severally, charging them so much for each parcel, graduated by the number of mules each tenant employed, and also by renting the land by leasing the plantation as a whole to one man.        It was further shown that the renting in parcels was ordinarily productive of considerably larger total net rent than the other method, and that it was practicable for the mortgagee to have thus farmed out the plantation; but it also appeared that this method involved a certain care and surveillance on the part of the landlord, at great expense of time and money, and might also involve the necessity for the landlord to advance supplies to the tenants; and further, that none of such infirmative considerations obtained to the letting of the place as a whole to one tenant.   *Held*: That the duty of the mortgagee in possession was fully discharged by exercising the care and diligence an ordinarily prudent and active owner would have exercised in leasing the place as a whole to one tenant, and that its liability to account for rent was to be measured accordingly.

10. *Same; with what rents the mortgagee chargeable.*—A mortgagee in possession of the mortgaged premises, is chargeable with the fair rental value of the property, which is, generally speaking, such as an owner of ordinary prudence could secure by the exercise of reasonable diligence; and in the absence of proof of willful default or gross negligence on the part of the mortgagee, the rent received by him in such case is to be taken as measuring the result of the exercise of due care and diligence, and beyond the rent so received, he can not be charged.

11. *Equity pleading; review of rulings of register.*—Where, in holding a reference for an accounting, a register in chancery proceeds upon correct principles to ascertain on testimony before him, the amount of each item on the account to be stated by him, his conclusions stand upon the footing of a verdict of a jury, and should not be disturbed by the chancellor or the appellate court, unless it is plainly erroneous; but when it appears that the register has proceeded upon correct principles to the conclusions he reaches and reports, and in consequence his finding is not wholly the result of his consideration of the testimony upon the issue, but is referable in a

material degree to a mistake of law or the misapplication of
law to the facts before him, his finding carries no presump-
tion of correctness with it before the chancellor, nor brings
any such presumption to the appellate court.

12. *Redemption by mortgagor from mortgagee; rental value of lands
not enhanced by permanent improvements.*—Where a mort-
gagee at a foreclosure sale under the power contained in the
mortgage, becomes the purchaser without being authorized
so to do in the mortgage, and subsequently makes a contract
of sale to a third party for the lands so purchased, and such
vendee makes permanent improvements upon the lands, upon
the redemption of said lands by the mortgagor, the mortga-
gee should not be charged with the enhanced rental value of
the land due to the permanent improvements made by the
vendee of the mortgagee.

APPEAL from the City Court of Montgomery, in
Equity.

Heard before the Hon. A. D. SAYRE.

The original bill in this case was filed by the Ameri-
can Freehold Land Mortgage Company, of London, Lim-
ited, against Rebecca M. Pollard and her husband,
Charles T. Pollard, and others.

Rebecca M. Pollard and her husband, Charles T. Pol-
lard, had executed a mortgage to the American Freehold
Mortgage Company of London, Limited, and upon de-
fault being made in the payment of the mortgage debt,
said mortgage was foreclosed under the power of sale
contained therein, and at said foreclosure the Mortgage
Company became the purchaser, but there was no au-
thority given in the mortgage for such purchase by the
Mortgage Company.

The prayer of the bill was that the respondents, Re-
becca M. Pollard and her husband, Charles T. Pollard,
be required to elect whether they would disaffirm and
avoid the purchase by the complainant of the land em-
braced in the mortgage, or whether they would affirm
said sale; and the complainant offered, in the event of
disaffirmance, to do equity generally and to account for
the rents. The bill further averred that in the event of a

disaffirmance that the mortgage be foreclosed for the amount of the debt secured by the mortgage and necessary expenses, including attorneys' fee for foreclosing the mortgage, as well as filing the bill. There was also a prayer for general relief.

The respondent, Mrs. Pollard, filed an answer to the bill as amended, which she prayed to be taken as a cross bill, in which she elected to disaffirm the sale and prayed for a redemption and accounting.

This cause has been before this court on four other appeals, which will be found reported in 103 Ala. 289; 120 Ala. 1; 127 Ala. 227, and 132 Ala. 155. Special reference is, therefore, made to the several reports of·this case as cited above.

On the final submission of the cause on the pleadings and proof, the chancellor decreed that the complainant in the original bill, the American Freehold Land Mortgage Company of London, Limited, was entitled to relief against the respondent, Rebecca M. Pollard, and to have said Rebecca M. Pollard elect to affirm or disaffirm the mortgage sale made on March 3, 1889, and that Rebecca M. Pollard having elected to disaffirm said sale, the complainant was further entitled to have the mortgage foreclosed.

The chancellor further decreed that the cross complainant, Rebecca M. Pollard, was entitled to the relief prayed for in her cross bill, and she having elected to disaffirm said mortgage sale, was entitled to redeem said property from under said mortgage. In accordance with this decree, a reference was ordered, which was as follows: "The court doth order, adjudge and decree that it be referred to the register to state an account between the complainant in the original bill, the American Freehold Land Mortgage Company of London, Limited, and the defendant, and complainant in the cross bill, Rebecca M. Pollard, of all matters and things properly arising out of the mortgage, a copy of which is attached as an exhibit to the original bill, and out of the relation existing between them as mortgagor and mortgagee, and for that purpose, he will ascertain the amount due and

unpaid on the said mortgage debt, or any balance over after payment thereof, which may be due to the said cross complainant, Rebecca M. Pollard; and to that end the register will proceed as follows:

"1. He will ascertain the amount of said mortgage indebtedness on the 7th day of January, 1889, carried in to said amount as part of said debt, the interest note due December 1st, 1888, with interest on said note to the 7th day of January, 1889, the date on which said mortgage company, the complainant, declared the principal sum due and payable, and from that date on he will allow interest on said principal sum subject to the credits to be allowed to Rebecca M. Pollard as hereinafter decreed. 2. He will charge complainant, said Mortgage Company, with the rent it actually received, or which by the exercise of reasonable care and diligence it could have received, from the date of its entry into the possession of the property the subject of said mortgage, that is, from the 7th day of January, 1889, to the date when the conveyance to said property by complainant, the said Mortgage Company, to E. S. Armistead took effect as such, and he will credit complainant, said Mortgage Company, as against said rent for any expenditures made by it during said period for the necessary repairs, and for taxes duly and legally assessed against said property, and paid by it, as well as for such reasonable and necessary expenditures in renting said property, that it may have incurred; but in estimating such expenses, for renting or collecting rent during said period, the register will not consider the facts to the prejudice of Mrs. Pollard, that the complainant, the Mortgage Company, was a non-resident corporation. 3. He will also charge complainant, said Mortgage Company, from the time its said conveyance to E. S. Armistead took effect to the 1st day of January, 1902, with such rent of said property as it could have received, if it had exercised reasonable care and diligence and had remained in possession of said property either by itself or its tenants; but no allowance during this period must be given or credited to said complainant, said Mortgage

Company, on account of any sums expended by E. S. Armistead or his vendees for improvements, repairs or taxes unless made for and on account of the original complainant; nor will the register charge the complainant, said Mortgage Company, for any increase in the rental value of said mortgaged property during this time occasioned by any improvement that may have been made thereon by the said Armistead or his vendees. 4. The register will also credit complainant, said Mortgage Company, with any reasonable sums that may be found due it for attorneys fees incurred in accordance with the stipulations contained in said mortgage, which said sum shall be computed as due at the time of the reference, but no such services rendered in resisting the redemption of the mortgaged property by Mrs. Pollard shall be allowed, except in so far as such services were necessary to collect any sum that may be found to be really due on said mortgage indebtedness. 5. He will allow to the defendant and cross complainant, R. M. Pollard, as against the mortgage debt, any damages for waste, either committed or permitted, by the complainant, the Mortgage Company, while in the possession or control of the said lands, or permitted by it after its said conveyance to E. S. Armistead; and the cutting and taking of timber, if any, from the premises without the consent of the mortgagor, Mrs. R. M. Pollard, will be treated as waste permitted by the Mortgage Company, the complainant. In estimating the damages arising from waste, the register will consider the value of the lands before and after the c ommission of such waste, and not the profits received by the complainant. 6. In stating said account, the register will make and allow annual rests, and the credits allowed Mrs. Pollard will be first applied to the payment of the interest on the mortgage indebtedness and any balances will then be applied to the principal sum. 7. The register will also ascertain what is a fair and reasonable rental value for the lands described in the bill for the current year, in accordance with the principals declared in the 3d section or paragraph of this decree, and will include the

same in the balance which shall be struck by him between the parties as of the date of the reference. 8. The register in executing this decree, will, when necessary, look to the proceeding and proof in this cause and receive all legal evidence offered, including testimony of such witnesses as were examined on the former reference."

It was shown by the facts of the case that in September, 1894, after the purchase at the foreclosure sale by the American Freehold Land Mortgage Company, of London, Limited, of the lands conveyed in the mortgage, said Mortgage Company entered into a contract with E. S. Armistead for the sale of said lands, and from that time Armistead exercised ownership over them up to 1902.

The register held a reference in accordance with the directions of the decree of the court, and at this reference examined many witnesses and had before him the testimony taken on the former reference. He made his report, which was substantially as follows: There were about 1,500 acres of tillable land in the Pollard plantation. The reasonable annual rental value of the place for the years 1889, 1890, 1891, 1892 and 1893, was $3,000. He did not credit the complainant with any repairs as distinguished from improvements for any of said years, the evidence failing to show what repairs were made, if any, and the value of the same. The complainant was allowed credit for taxes paid in 1892 for the years 1889, 1890, 1891, and was also credited with the amount paid in 1893 for the taxes of 1892. He reported that improvements were made on the place as follows: In 1892, the improvements made amounted to $1,015; in 1895, to $1,405; in 1896, to $175; in 1897, to $675; in 1898, to $310, making a total for the improvements upon the place of $3,580. These improvements were not credited to the complainant, except so far as they affected the annual rental value of the plantation for said years. The register found that during the years the improvements were made, the lands were in better condition, and that the rental value in the neighborhood of said lands had

materially increased.   Taking into consideration the improvements, the increased rental value in the community, and the improved condition of the farm during said years and all the evidence on the subject of the rental value of the said plantation for said years and subsequently, the register found that the annual rental value of said plantation after said improvements was $3,500.   The register found and reported that the said rental value of the lands without the improvements for the years in which the improvements were made were as follows:     1894,     $3,333.33;     1895,     $3,336.10;     1896, $3,489.80; 1897, 3,421.27; 1898, $3,463.81; and that with said improvements the rental value was $3,500 for each year.   The register found the increased rental value for any one year during said period, on account of the improvements for that year, to be in proportion to the entire rental of said year as the value of the property was to the improvements for said year.   He allowed and credited to the respondent for the years 1899, 1900, 1901, 1902, $3,500 as a reasonable rental value for said plantation during said years.   He found that timber was cut and hauled away from said plantation and marketed during the occupation thereof by Armstead, and that the difference in the value of said lands before said timber was cut from the premises and after it was so cut, was $800, and said sum of $800 was credited to the respondent.   The register allowed $2,000 as a reasonable compensation to be paid to the complainant's attorneys.   He declined to credit the complainant with any expenditures for renting the land and collecting the rent.   He found and reported that after allowing all credits, the complainant was indebted to the respondents for a balance of $7,865.84.

To the register's report, the complainant filed many exceptions, which were as follows: 1.   To the failure of the register to allow interest on taxes paid from the date of payment, respectively, to the time the rent was due for each of the years, respectively.   2. To fixing the rent for the years 1889, 1890, 1891, 1892, and 1893, at $3,000.   3. To fixing the rent for 1890 at an amount exceeding

$1,500, which was the amount shown to have been received for the rent that year. 4. To the failure of the register to allow credits for taxes paid by Armistead under an agreement with the complainant for the years from 1895-1902, inclusive. 5, 6, 7, and 8. To the failure of the register to allow credits paid in different years for repairs. 9, 10, 11, 12, and 13. To the fixing of the rent for the respective years 1894, 1895, 1896, 1897, and 1898, at an amount as stated in the report. 14. To fixing the rent of each of the years 1899, 1900, 1901, and 1902, at $3,500. 15. To fixing the rent for either of the years 1894 to 1902, inclusive, in excess of $2,750 per year. 16. To fixing of the rent for either of the years 1894-1902 in excess of $3,000 per year. 17. To the allowance by the register of $800 for waste. 18. To the failure of the register to allow $3,000 solicitor's fees to complainant. 19, 20, 21, and 22. To failure of the register to allow the several credits claimed for the respective amounts paid by complainant for the collection of the rents for the years 1890, 1891, 1892, and 1893. 23. To finding that there were 1,500 acres of tillable land on said place. 24. To the failure of the register to give credit for the fee due to the complainant at the time it was paid. 25. To the allowance by the register of the fee due to complainant at the date at which it was allowed; the evidence showing that said fee was paid long before it was allowed.

The respondent, Mrs. Rebecca M. Pollard, filed many exceptions to the register's report, which are in substance as follows:

1. To the register's finding that there were only 1,500. acres of tillable land on said plantation. 2. To the register fixing the annual rental value of the place for the years 1889, 1890, 1891, 1892, and 1893, at only $3,000 per year. 3. To finding that $3,500 of improvements had been made on said place. 4. To the ascertainment and reporting the several amounts of improvements made upon said place from the year 1894 to 1898, inclusive. 5. To finding and reporting that there was a barn built in 1894, costing $1,015. and during the following four years

improvements were made to the extent of $2,656.  6.  To the report as to the rental value of the lands, without the improvements for the years 1894 to 1898, inclusive. 7.  To ascertaining that the the value of said plantation when sold under the mortgage was $26,000.  8. To finding and reporting a rental value of only $3,500 per year for the years 1899 to 1902, inclusive.  9.  To allowing the complainants a credit for attorney's fees of $2,000. 10.  To allowing only $800 for waste.  11.  To finding that the rental value of the property was increased by reason of improvements placed thereon.

On the submission of the cause for a decree on the several exceptions taken by the complainant, Mortgage Company, by the defendant, Rebecca M. Pollard to the register's report, and the several exceptions to evidence reserved by each of said parties, and on the motion of the complainants to set aside said register's report, and for a decree ordering a new reference, the judge of the city court, sitting as chancellor, overruled the motions for a decree of further reference, and overruled the complainant Mortgage Company's exceptions to the register's report numbered 1, 2, 3, 4, 5, 6, 7, 8, 17, 18, 19, 20, 21, 22, 23, 24, 25, and sustained the Mortgoge Company's exceptions to the register's report numbered 9, 10, 11, 12, 13, 14, 15, and 16, and further decreed that the exceptions of the defendant Rebecca M. Pollard to the register's report be severally and separately overruled.  It was then further decreed that the register's report as corrected be confirmed, it being declared in said decree that the defendant Rebecca M. Pollard was indebted to the American Freehold Land Mortgage Company on the date of the rendition thereof, on account of the mortgage indebtedness mentioned in the original bill, in the sum of $9,199.64.  It was further ordered that Rebecca M. Pollard be allowed to redeem the premises described in the bill, by paying said sum into the registry of the court and also one-half of the costs in the cause, and that in the event of her failure to pay said sum, that the register proceed to sell said premises at public sale.  From this decree a

cross appeal was taken by each of the parties complainant and respondent; the American Freehold Land Mortgage Company assigning as error the part of the decree overruling its exceptions to the register's report, and Rebecca M. Pollard assigning as error the sustaining of some of complainant's exceptions to the register's report, and overruling all of her exceptions to the register's report.

JOHN G. WINTER, GEORGE F. MOORE, and E. F. JONES, for Mrs. Pollard.—In renting the lands in this case, there was a duty imposed upon the mortgagee after it had assumed possession of the Pollard place to use such care and diligence as might have been reasonably expected from a prudent and provident owner of the property. A prudent owner would have rented the property in small farms or parcels, instead of renting it as a whole to one man as was done by the Mortgage Company.—*Grant v. Mosely,* 29 Ala. 305; 2 Jones on Mortgages, § 1123; 2 Daniel's Chancery Plead. & Prac. 1239; *Dawson v. Drake,* 30 N. J. Eq. 601; *Shaeffer v. Chambers* 2 Halstead's Ch. 549; *Leeds v. Gifford,* 41 N. J. Eq. 466; *Sloan v. Frothingham,* 72 Ala. 606.

The burden of proof under the facts of the cacs, is on the complainant to satisfy the court that it exercised that reasonable care and diligence which a prudent owner would have used in renting the property for $2,000 and $1,500 per annum. It has not met this test. On the contrary, it has been shown that in this respect the Mortgage Company grossly failed of its duty. This question was not presented to the special register or the court on the former reference.—*Great Western R. R. Co. v. Bacon,* 30 Ill. 347; 1 Greenleaf on Evidence, (16th ed.) §§ 79, 92; *Shaeffer v. Chambers,* 2 Halstead's Ch. (N. J. Eq.), 548.

The register charged only $800 as damages for waste, while he should have charged $1,500, and should have put this item in the account as of the date it was committed. The mortgagee's responsibility for waste was measurable, not by what was received from the sales of

the timber, but by the depreciation caused in the value of the land by its having been denuded of its timber. *Pollard v. A. F. L. M. Co.,* 132 Ala. 152; *Ib.* 127 Ala. 227.

There was error committed in the allowance of the attorney's fees.—*Stein v. Burden,* 24 Ala. 147; *Mortgage Co. v. Pollard,* 103 Ala. 289; *Decatur Land Co. v. Palm,* 113 Ala. 536.

KNOX & BOWIE and WATTS, TROY & CAFFEY, for Mortgage Company.—When the Mortgage Company foreclosed its mortgage in March, 1889, and became the purchaser of the property at such sale, and went into possession thereunder, it held the land as mortgagee until such time as the mortgagor exercised her election to affirm or disaffirm said sale.—*Dozier v. Mitchell,* 65 Ala. 511; *Dudley v. Witter,* 46 Ala. 664.

Our contention, then, is that the mortgagee from 1889, when Mrs. Pollard affirmed the sale, up to 1899, when she disaffirmed the sale and thereby in effect commenced her suit to redeem was in possession of the property, not as mortgagee, but as owner, holding it under the color of title created in it by her affirmance of its sale, and that therefore the mortgagee complainant in this case, could not be held responsible for any of the rents of said premises from the date of her election to affirm in 1889 to a period of one year prior to her election to disaffirm in 1899, and that, therefore, the exceptions 24 and 25 made to the report of the register should have been sustained, and the complainant should not have been charged with any of the rents during the time it thus held possession as owner under the color of title created by said affirmance of said sale.

The court correctly reached the conclusion that for the years 1889, 1891, 1892 and 1893, the complainant was only chargeable with $2,000.00 a year rent, if it was responsible for rent at all during said time. The court, however, is in error as to 1890. It is said in *Gresham v. Ware,* 79 Ala., on p. 199, "On a bill to redeem, a mortgagee in possession will not be held accountable for anything more than rents actually received, unless there has been willful default or gross negligence, which in

such case is the measure of such reasonable diligence." See also *Barron v. Paulding,* 38 Ala . 292; *Dozier v. Mitchell,* 65 Ala. 511.

The law is, "The rents with which the mortgagee is chargeable must be estimated on the value of the property *when he took possession,* and not on the increased value by reason of permanent improvements subsequently made."—*Gresham v. Ware,* 79 Ala. 199; *Dozier v. Mitchell,* 65 Ala. 562.

When the complainant sold to Armistead, it and he had the right to believe that it had an indefeasible title to the place, because the purchase of the property by the complainant, voidable at the time, became valid upon her election to confirm it. When Armistead bought and went into possession under this warranty deed, he no longer held under or through complainant, but held adversely to complainant, and, therefore, the rents received by Armistead, or he could have received, should not be charged against complainant under the decree, because Armistead was not holding under or through complainant. That Armistead's possession was adverse to complainant and respondent, see *Beard v. Ryan,* 78 Ala. 37; *Jernigan v. Flowers,* 94 Ala. 508; *State v. Connor,* 69 Ala. 212; *Walker v. Crawford,* 70 Ala. 567; *Riggs v. Fuller,* 54 Ala. 141; *Cooper v. Watson,* 73 Ala. 252; 3 Brick. Dig. 17, §§ 25, 31, 34.

The complainant contended in exception No. 1 taht it was entitled to commissions for collecting the rents before the sale to Armistead in 1894. This claim was based upon the fact that the complainant had its home office in London and its principal office in this country in New York and was forced to act through agents employed to rent out its lands and collect its rents.—2 Jones on Mortgages, 1131, 1132, 1138; 27 Ency. Law (1st ed.), p. 177; *Rainsford v. Rainsford,* McMull Eq. (S. C.) 16; *Johnson v. Lewis,* 2 Strobh. (S. C.) 157; *Semple v. Marks,* 111 Ala. 637. The mortgagee may charge for services of an agent to collect the rents if the owner would ordinarily do so.—2 Jones on Mortgages, 1132.

The complainant was entitled to be reimbursed or to be credited with the permanent improvements which had been made on the property after the foreclosure sale.—*Gresham v. Ware,* 79 Ala. 199; 2 Jones on Mortgages, 1127. "When the mortgagee makes permanent improvements supposing he has acquired an absolute title by foreclosure, upon a subsequent redemption, he is allowed the value of them, especially if the mortgagor has by his actions to any extent favored the mistaken belief."—*Minor v. Beekman,* 50 N. Y. 337; *Benedict v. Gillman,* 4 Paige (N. Y.) 58; *Troost v. Davis,* 31 Ind. 34; *Roberts v. Fleming,* 53 Ill. 198; *Gillis v. Martin,* 2 Dev. Eq. (N. C.) 470; *Bacon v. Cattrell,* 13 Minn. 194; 16 Ency. Law (2d ed.), pp. 67, 75; 65 Wis. 481; 6 Paige (N. Y.), 390; 68 Iowa, 326; 100 Mass. 271; 12 Pick. 40.

The mortgagee may also be entitled to improvements where he has been in possession a long time and the mortgagor, *knowing the improvements were going on,* interposed no objection.—2 Jones on Mortgages, 1128; 16 Ency. Law (2d ed.), pp. 67-75.

The respondents are not entitled to charge complainant with waste committed by Armistead, for three reasons:

(1) Because in equity the mortgagee in possession is not chargeable with the value of timber cut, but only with the diminished value of the land caused thereby. *Perdue v. Brooks,* 85 Ala. 459. (2) Complainant had no control whatever over the property, and is not liable for any wrong committed by Armistead.—2 Jones on Mortgages, 1123. (3) There was no authority in the decree rendered December 7, 1899, under which the reference was held in this case, for ascertaining any amount against respondents for waste.

McCLELLAN, C. J.—These appeals involve a review of the action of the judge of the city court sitting as chancellor upon exceptions to the report of the register and master made on reference to state the account between a mortgagor and a mortgagee, in possession for the purposes of redemption, or, failing that, foreclosure.

As to the amount of the original mortgage debt and as
to interest charges thereon there was no dispute before
the master, and the correctness of his finding and report
in that regard was not questioned before the chancellor,
and, of course, is not questioned here.   The correctness
of his finding and report as to the amount the mort-
gagee should be charged for rents of the lands while it,
the mortgagee company, was in possession of them or
chargeable as a mortgagee in possession, and as to the
amount such mortgagee should be charged as for waste
committed on the one hand, and, on the other, as to the
amount the mortgagor should be charged for attorneys'
fees provided for in the mortgage, and for taxes paid
on the land during such possession, was challenged by
exceptions thereto, and the chancellor in passing upon
those exceptions overruled such of them as went to the
findings as to waste, as to attorneys' fees and as to taxes,
and sustained those which went to the master's findings
as to the rents chargeable against the mortgagee, and re-
duced those charges from three thousand to two thous-
and dollars per annum for certain five of the years of
the mortgagee's possession, and from an average of
about three thousand five hundred dollars to three thous-
and dollars for each of the remaining years of such pos-
session.   As to the rents, the liability of the mortgagee
is not now nor was it before the master or chancellor,
denied, but the issue in that respect is one of amount
only.   As to waste, the contention of the mortgagee is
that no formal claim therefor was made in the case, and
also that waste was not proved.   As to attorneys' fees,
the mortgagor's position is that the amount thereof was
not proved, and hence that nothing should be allowed
to the mortgagee on that account, and the contention of
the mortgagee is that it should have been allowed three
thousand dollars on that account instead of the two
thousand dollars allowance found by the master and con-
firmed by the chancellor.   And in respect of taxes, the
mortgagee insists that it should have been allowed all
taxes assessed against and paid on the property from
the time it went into possession to the time of hearing,
whereas the report made and confirmed disallowed its

claim in this connection for taxes paid by a purchaser from it during the years he held the land as such purchaser. There are also brought under consideration some questions as to the computation of interest on taxes paid and on attorneys' fees allowed, and upon the failure of the register to allow the mortgagee credit for repairs it claimed to have made, and for expenses incurred in the collection of rents.

We will first consider questions which arise upon those parts of the decree whereby the findings and report of the master as to certain items are confirmed; and in approaching these matters it is well to state and have in mind the familiar rule which obtains here in respect of revising the decree in so far as it *sustains* the findings of the master on evidence adduced before him, and confirms his report thereon. "The rule is," said Chief Justice WALKER in *Mahone v. Williams,* 39 Ala. 202, 221, "to indulge all reasonable presumptions in favor of the register's decisions upon questions of fact, such as those now under consideration, and not to reverse it unless clearly satisfied that it is wrong. Judge Story goes so far as to say, 'that the court must be clearly satisfied that there has been unquestionable error.'" And he illustrates the application of the rule thus: "The testimony as to the annual value of the slaves is conflicting and voluminous. We have made an examination of it. No two minds would ever draw the same conclusion from it. As the result of our examination, we feel no full conviction that the register's conclusion is wrong. His conclusions are not unreasonable. It does not appear to us that they are plainly wrong; and, therefore, we will not reverse the chancellor's decree confirming the report." On this subject, it was said in *Jones v. White,* 112 Ala. 449, 451: \* \* \* "To say the least, we cannot affirm that the chancellor erred in overruling the exceptions and confirming the report. The evidence before the register, consisting for the most part of the oral testimony of witnesses, and being presented to the chancellor and here in written form, the rule laid down in *Woodrow v. Hawving,* 105 Ala. 240, and also the gen-

eral rule to be observed in reviewing findings of fact by
the register on reference. *Mahone v. Williams, supra,*
requires the chancellor and requires us to indulge all
reasonable presumptions in favor of the register's de-
cision upon questions of fact, * * * and not to reverse
it unless clearly satisfied that it is wrong." The general
doctrine that the register's conclusion upon evidence
should not be disturbed unless it is "clearly wrong,"
"palpably erroneous," "plainly and palpably incorrect,"
etc., etc., and so appears after the indulgence of all reas-
onable presumptions in its favor, has been declared also
in the following cases: *Kinsey v. Kinsey,* 37 Ala. 393;
*Lehman v. Levy,* 69 Ala. 43; *Winter v. Banks,* 72 Ala.
409; *Glover v. Hembree,* 82 Ala. 324; *Trust Co. v. Wood,*
108 Ala. 85; *Warren v. Lawson,* 117 Ala. 339; *Speakman
v. Burleson,* 123 Ala. 678. The effect of this rule in
cases of findings upon the testimony of witnesses, oral
evidence, considered in connection with the doctrine of
*Woodrow v. Hawving, supra,* is to put the register's de-
cision upon the same footing as the verdict of a jury, and
to authorize the reversal of a decree confirming it only
upon such a state of case as would require a trial court
to grant a motion to set aside the verdict of the jury and
grant a new trial.—*Cobb v. Malone,* 92 Ala. 630; *Bank
v. Chaffin,* 118 Ala. 246.

This rule for the examination and consideration—the
review—of decrees confirming the register's finding of
fact, has application here to the charge of eight hundred
dollars for waste made against the mortgagee. Having
this rule in mind and the testimony of the witnesses
Huggins and Barnes going to show that the denudation
of the place of timber by Armistead reduced the value
of it to the extent of from eight hundred to fifteen hun-
dred dollars, we cannot affirm, even though there was
strong evidence to the contrary, even to the effect that
the removal of the timber increased the value of the
land, that the chancellor erred in confirming the report
of the register as to that item.

What we here say is not intended to foreclose certain
objections to the allowance of this item based upon other
considerations than the testimony as to this cutting of

timber being waste, etc.; but we proceed to consider those other objections. The first of them is that the mortgage company is not liable for this waste for that it was not committed by the company directly or indirectly, but by Armistead for whose acts in that regard the mortgagee is not responsible. This court on the former appeal in effect held, or at least proceeded upon the assumption, that the mortgage company was liable for waste committed by Armistead, and we think that ruling or assumption was correct. It may well be that a mortgagee in possession is not liable for waste committed by a tenant, a party to whom he has merely rented the land, and who has only the right of a tenant, since it is the mortgagee's duty to rent the premises; but if the mortgagee should assume to do more than this duty imposed upon it, and in and by the contract of rental had undertaken to authorize the tenant to do acts which constitute waste as between the tenant and the mortgagor, and waste under these circumstances were committed by such tenant, unquestionably the mortgagee would be *in pari delicto* with the tenant, and himself responsible for the injury thus done to the land. And if possible, it is a clearer case against the mortgagee when he repudiates his duty to rent the premises, and, wholly apart from any rental contract, assumes to authorize another to waste the lands, directly or indirectly. The mortgagee here, instead of renting the lands, undertook to and, as far as it was competent to that end, did, sell them to Armistead. The status which it thus assumed to confer upon Armistead involved as between the company and Armistead the right on the part of the latter to denude the place of timber and do whatever else he saw fit with it; the rights of the owner. The transaction was in effect an authorization from the company to Armistead to cut the timber from the lands of the mortgagor, involving a repudiation of the company's duty to rent the land and a violation of its duty as a mortgagee in possession to conserve the integrity of the property. It is clear to us that the mortgagee is liable for the waste

it thus, as far as lay in its power, authorized Armistead to commit.

Another objection put forward here to the allowance to the mortgagor of this item of waste is that of damages or compensation for waste are not claimed in her cross-bill for accounting and redemption. We do not find that such claim is presented by the cross-bill, and, for the purpose in hand, it may be conceded that, abstractly speaking, a mortgagor would not be entitled to credit for waste on bill or cross-bill for accounting and redemption exhibited against a mortgagee in possession in the absence of all claim in the bill or cross-bill of damages on that account. This, however, will not avail the mortgage company on this appeal. The mortgagor's claim on account of waste has all along been treated as being properly in the case. It was one of the matters litigated on the first reference, and it was discussed and considered on its merits on the appeal from the decree of the chancellor on the first report of the register. On the reversal of that decree and remandment of the cause, a second decree of reference was entered and in that decree the register is directed to allow the mortgagor damages for any waste that the evidence may show had been committed or permitted by the mortgagee. That direction is not assigned as erroneous. The register obeyed the decree in this respect, found the damages to be eight hundred dollars, and allowed that sum to the mortgagor. It does not appear that this allowance was challenged in the court below on any other ground than that the evidence did not show any damages had resulted from the felling of timber which the register found to be waste and to have injured the estate in the sum allowed by him. The objection here made to this allowance, based on the failure of the cross-bill to aver waste, etc., comes too late.

The register allowed the complainant two thousand dollars for attorneys' fees. The mortgagor excepted to this allowance on the ground that the value of attorneys' services she was chargeable under the mortgage had not been proved. The mortgagee excepted to the allowance on the theory that the evidence showed it was

entitled to an allowance of three thousand dollars. The chancellor overruled the exceptions on either hand and confirmed the register's report in this regard. The mortgagor's position on this matter is untenable. There was evidence before the register, and also before the chancellor, authorizing an allowance of counsel fees by the former and the confirmation of an allowance on that account by the chancellor. All the papers in the cause showing all the proceedings that had taken place, and evidencing the character of the litigation, the importance of it as to amount, and, in a way, the character and extent of the services performed by plaintiff's counsel to the end of foreclosing the mortgage and collecting the debt secured by it, were before the register and again before the chancellor, and proper to be considered by them.—*Stephenson v. Allison,* 123 Ala. 489. There was also before the register and afterwards before the chancellor testimony on the part of the witnesses Massie and Bradshaw tending to show the value of such services of complainant's solicitors. Upon the case thus presented, it was for the register in the first instance to determine what would be a reasonable allowance for counsel fees, subject, of course, to review by the chancellor on exceptions taken. That there was a large sum due on the mortgage debt when foreclosure proceedings were begun is not questioned, nor is it denied that such proceedings were necessary when they were instituted. It would seem to be of no consequence to complainant's right to counsel fees if the necessity for an actual foreclosure should have ceased because of the application to its debt of the rents of the mortgaged premises, the possession of which was acquired as an incident to the sale and purchase by the mortgagee in an attempted foreclosure under the power of sale. But that is really an abstraction in the case. As to the *amount* allowed for counsel fees: We cannot consider the amount which should have been allowed as an original proposition. We, under the rule stated above, must affirm the decree of the chancellor confirming the allowance made by the register unless it is plain and clear to us that the allowance

was incorrect in amount. We are unable to say that the register's finding was clearly erroneous. It is true that the only witnesses who testified as to the value of the services in question, placed that value at three thousand dollars, and the register found it to be only two thousand. But this testimony was the mere estimates, opinions of the witnesses. Their judgment cannot be substituted for that of the register. He was not bound to find in accordance with their estimates. As to one of those witnesses there were circumstances calculated to bias him favorably toward a high estimate. As to the other, it was not altogether clear but that his estimate was based in part upon services for which the mortgagor was not liable. These and other considerations were proper to be entertained by the register in determining the ultimate weight and effect to be accorded the estimates of these witnesses; and upon them and the whole case as developed before him, it was his power and duty to determine for himself what would be reasonable compensation to be allowed the mortgagee in this connection. *United States v. McGhue;* 1 Curtis C. C. 1, 9; *Forsyth v. Doolittle,* 120 U. S. 73, 77; Rogers Expert Testimony, § 207; *Tennessee & Coosa Railroad Company v. Danforth & Armstrong,* 112 Ala. 80, 93-4.

The professional services for the value of which this allowance of two thousand dollars was made, were rendered throughout a period of about fourteen years extending down to and including the time of this reference and were constituted in part of services of the mortgagee's attorneys on this reference. There was, however, evidence going to show that the mortgagee paid its counsel in advance for all these services, paid them as far back as the year 1889, more than the sum now allowed by the register, for services commencing then and continuing down to 1902; and upon this state of case it is contended that the register should have allowed the mortgagee interest on the two thousand dollars attorneys' fees from 1889 to the time of stating the account. No authority is cited in support of this proposition and probably none exists. The mortgagor is bound in such case no more by or on account of the *time* the expendi-

ture is actually made than by the *amount* actually paid at any time for such services. In respect of amount he is liable for reasonable fees wholly regardless of the sum the mortgagee may have contracted to pay, or in fact paid. And so in respect of the time of payment by the mortgagee. The mortgagor, to put the case most strongly against him, cannot be held to reimburse the mortgagee for fees paid as of a given date unless it be shown that it was reasonably necessary for the payment to be upon that date. Assuming without deciding that where it is reasonably necessary for a mortgagee to pay his counsel a retainer at the institution of a foreclosure suit, the mortgagor who in the end is adjudged to be liable for the sum so paid may be held also to pay the interest thereon, it by no means follows that where the mortgagee without necessity pays in advance for the services of counsel throughout the litigation, extending, as here, over a period of more than a dozen years, the mortgagor is liable for interest on such premature expenditures. Such a charge could by no means be said to be reasonable, or necessary to the adequate reimbursement of the mortgagee for *reasonable* expenditures toward the foreclosure of the mortgage. It would be manifestly unreasonable and inequitable to charge this mortgagor interest from 1889 to 1902 on attorneys' fees for services rendered in 1902 and in and about the reference upon which it is sought to have the charge made; and so, in less flagrant degree only, in respect of all services rendered subsequent to 1889, and which constituted the main part of all the services rendered by mortgagee's counsel in the case. If any part of the two thousand dollars was necessarily paid in 1889, the evidence neither shows the fact of such payment nor the sum then necessarily paid, so that no case is made, even under the assumption upon which we are proceeding, for charging the mortgagor with any interest in this connection.

The payment of taxes by the mortgage company for each of the several years the company was actually and

directly in possession as mortgagee, were necessary payments for which it was entitled to credits against the charges for rent for each of those years; and credits to the extent of the sums so paid were allowed by the register, and their allowance was confirmed by the chancellor. The company, however, insisted below and contends here that it should have been allowed interest on the several sums expended for taxes from the dates of such payments, respectively, to the times at which they were applied in reduction of the rent charge for the current year: In a given year, for example, the taxes were paid in March and the rent charge was made as of January 1st following, the rent charge being reduced as of that time by the sums actually paid months before for taxes; and the position of the company is that the interest on the sum so paid in March to the time of the allowance as a credit on the rents, should also have been allowed the company in further reduction of the rent charge then made. We are of opinion that this position is well taken. These payments on account of taxes were necessary to be made when they were made. From the time they were made, respectively, to the time the rents became due in the respective years, the mortgagee was deprived of the use of the tax money so paid, and its use enured to the benefit of the mortgagor in the sense that they protected her interests as well as those of the mortgagee in the premises. The mortgagee is not fully reimbursed for his expenditures on account of taxes unless he is allowed interest on such expenditures from the times they are made to the times when they are credited on the rent charges against him; and he is entitled to full reimbursement, to be made whole, in this regard. The account stated must be so modified as to accommodate these several items of interest as allowances to the mortgagee. We do not understand that this question was determined on the last appeal. What was then said as to interest on sums paid for taxes seems to have had reference to a claim for such interest down to the time of reference and not to the period from such payment to the succeeding date of charging the rents for the current year.

It was decided on the last appeal that the mortgage company was not entitled to credit for taxes paid by its vendee Armistead, and we adhere to and reaffirm that ruling. The stipulation in the contract of sale which the company undertook to make to Armistead that the latter should keep the taxes on the land paid up was intended merely to protect the company's supposed lien for purchase money. It was in no sense a contract to pay the taxes *for* the company as in discharge of its duty to pay them, for as between it and Armistead no such duty rested on the company, nor did it involve in any event the liability upon the company to pay back to Armistead the money he should pay on account of taxes. The company has not paid these taxes directly or indirectly. Armistead did not pay them for it in any sense that would involve a liability on its part to repay him, and it can never be made liable for the money so paid. Clearly it is not entitled to credit for the money so paid by Armistead.

We cannot affirm that the register was plainly in error in his conclusion that the evidence failed "to show what repairs were made, if any, and the value of the same," and hence, we find no error in the decree of confirmation in respect of the mortgagee's claim for repairs.

As we shall see further on, the mortgagee is chargeable in respect of rents upon a consideration of the rental value of the lands taken as a whole and rented to one person. It is not shown and we cannot believe it to be necessary for an individual owner of such plantation as this, residing in the county where it is situated. to employ and pay an agent to rent it out *in solido* to one tenant or to collect the rents from such tenant. And this is the standard by which to determine whether the mortgagee here should be credited with commissions paid by it for such services of its agents. Of course, it was necessary for this mortgagee to have this business done by an agent, because it was a corporation and a non-resident corporation at that; but these fortuitous circumstances cannot be made the basis for the imposition of burdens upon the mortgagor beyond such as would have been in-

cident to the transaction had the mortgagee been a resident natural person. As was said on the former appeal, the mortgagor "is not to be prejudiced because the mortgagee was a non-resident corporation and was compelled by that fact to pay agents for attention to rents." (132 Ala. 164. At least we may say that the register's conclusion that no reasonable necessity was shown by the evidence to exist for employing and paying agents in and about the rental of the land cannot be affirmed to be clearly wrong; and hence our concurrence in his disallowance of the mortgage company's claim for expenses incurred in that connection.

There is left for review those parts of the decree which determine the amounts chargeable against the mortgagee as rents for the lands since the mortgage company took possession of them early in 1889. A question much discussed in this connection is as to the mode of renting the propetry incumbent upon the mortgagee in possession, that is to say, whether it was the company's duty to let the plantation in parcels to farm laborers severally, charging them so much for each parcel graduated by the number of mules each tenant employed, the average per mule being from twenty-five to twenty-seven acres, or whether the mortgagee's duty could be fully performed by leasing the plantation as a whole to one man. The evidence showed that both methods of renting were in vogue with ordinarily prudent and diligent owners of large tracts of land in that country. It was also shown that the renting in parcels to tenant "croppers" was productive ordinarily of considerably larger total net rent than the other method, and that it was practicable in a sense for the company thus to have farmed out this plantation; but it also appeared that this method involved a certain care and surveillance on the part of the landlord, certain looking after and overseeing the numerous tenants at the expense of time and money to the landlord, and might also involve a necessity for the landlord to advance supplies to the tenants to enable them to plant, cultivate and gather crops, and further that none of these infirmative considerations pertained or was incident to letting of the place as a

whole to one tenant for a lump rental. The register states in a collateral and incidental way in the course of his report that his findings in respect of the rents to be charged against the company are based upon the evidence as to the rental value of the place rented as a whole and to one tenant, and the chancellor's decree in that regard proceeds upon the same basis of computation. We do not doubt that that is the correct basis. We are by no means prepared to say on the showing made that it was the conmpany's duty to rent the plantation in parcels. To the contrary, our opinion is that its duty in the premises would have been fully discharged by exercising the care and diligence an ordinarily prudent and active owner would have exercised to lease the place as a whole to one tenant; and its liability to account for rent is to be measured accordingly.

For the first five years of the period in respect of which the company is to be treated as a mortgagee in possession, it rented the plantation, as a whole, and received the stipulated rentals. The sums it so received are to be taken as measuring its liability to account to the mortgagor for the rental values of the lands for those years, unless such sums were materially less than such values, and it is made to appear that the company's failure to contract for and realize fair rental values was due to willful misconduct or default, or gross negligence on its part. Some expressions of this court have led to more or less confusion in the interpretation and application of the rule just stated. Thus, in *Gresham v. Ware,* 79 Ala. 199, it is said: "On a bill to redeem, a mortgagee in possession will not be held accountable for anything more than rents actually received, unless there has been willful default or gross negligence, *which in such case, is the measure of reasonable diligence;*" and so, on the former appeal in this case, (132 Ala. 161-2), it is said that in such case the mortgagee is liable for the rents received, and that "for loss of rents and profits he is liable to the extent the loss results from his willful default or gross negligence, *which in such case is defined as a failure to use reasonable care and dili-*

[Pollard *et al.* v. Am. Freehold Land Mgt. Co. of London, Ltd., and Am. Freehold Land Mgt. Co. of London, Ltd. v. Pollard *et al.* ]

*gence."* The expression to which we refer are those we have italicised. It appears at a glance that they might well be construed to mean that any want of reasonable care and diligence in the premises, though amounting to simple negligence only—mere inadvertance—is the equivalent of willful misconduct or of gross negligence within the intent and purview of this rule. That is not the law, and it is not the idea intended to be conveyed by the language we have quoted. An accurate statement of the doctrine would be this: When a mortgagee holds possession of the mortgaged premises he is chargeable with the fair rental values of the property. The fair rental values, generally speaking, are such as an owner of ordinary prudence could secure by the exercise of reasonable diligence. When the mortgagee leases the premises and reserves and receives rent therefor, *prima facie* he has acted with reasonable care and diligence, and, therefore, *prima facie,* he will be charged only with the rent he has so received: All which is to say that in the absence of proof of willful default or gross negligence the rent received by the mortgagee in such case is to be taken as measuring the result of the exercise of due care and diligence, and beyond such result he cannot be charged. To charge him as rental value a sum in excess of what he has received as rent upon the ground that an ordinarily prudent and diligent owner would have received such larger sum, would be to charge him upon the same considerations which obtain where the lands have not been rented at all, and to give no operation or effect whatever to the presumption, which the law indulges until it is shown that the sum is less than the rental value and that his failure to secure such larger amount was due to his gross negligence or willful default, that the sum received was all that reasonable care and diligence could have secured. The register was misled by the expressions to which we have adverted to the conclusion that the company was chargeable with a much larger sum for each of the five years it rented out the land than that received by it, upon the express ground that "a provident owner could have realized by exercising reasonable care and

diligence" such larger sum per annum, wholly without reference to the question whether the company's failure to secure the larger sum was due to willful default or gross negligence on its part. As the register's findings of the amounts to be charged against the mortgagee for the five years now under consideration were thus based upon an error of law, and as he did not find as a fact that the company had been guilty of willful default or gross negligence, these findings came before the chancellor on exceptions to the report unattended by any presumption of correctness; and the question of willful default or gross negligence *vel non* was at large before the chancellor and for original determination by him. As we have seen, the chancellor reduced the allowance of three thousand dollars per annum made by the register to two thousand dollars per annum. This was the sum received by the company for four of the five years in question, and for the remaining year of this period the company received only one thousand five hundred dollars as rent for the place. The chancellor does not expressly pass upon the question whether the company was guilty of willful default or gross negligence in not securing more rent; but the decree in this connection is virtually a decision, or necessarily involves a conclusion, acquitting the mortgagee of such fault, since if the charges for those years was to have been made on the contrary conclusion it would necessarily on the evidence have been materially greater than two thousand dollars per annum. But whether the chancellor decided that question, directly or indirectly, or not, it is before us now as an original issue, and to be determined without regard to what occurred below. We deem it unnecessary to set forth or to discuss the evidence bearing upon it; but will content ourselves with stating our conclusion that it is not made to appear that the failure of the company to secure more rent for the place during the years 1889-1893, inclusive, than it contracted for and received was due to willful default or gross negligence on its part. It follows, of course, that the mortgagee should have been and is now to be charged only with the rent it

received. These amounts were for 1889, $2,000, for
1890, $1,500, and for 1891, 1892, and 1893, severally,
$2,000. The company not having been guilty of willful
default or gross negligence in the premises, the chancel-
lor erred in charging it two thousand dollars for the
year 1890: That item of charge should have been fifteen
hundred dollars, the amount contracted for and received
by the mortgagee. The decree must be modified so as to
debit the mortgagee with the smaller sum as the rent for
that year.

The decree in so far as it sustains the complainant's
exceptions to findings of the register of the rental value
of the plantation for each of the years 1894-1902, inclu-
sive, and fixes the rent charge for each of those years at
a less sum than that found and stated on the reference,
remains to be considered. We apprehend the general
rules of consideration obtaining in this court where the
chancellor has sustained exceptions to the findings of
the register in a matter of this sort, and reduced the
amounts of such findings or disallowed them altogether
as items in the account to be these: First, where the
register proceeds upon correct principles to ascertain on
testimony before him the amount of an item on the ac-
count to be stated by him, his conclusion, as we have
seen, stands upon the footing of the verdict of a jury,
and should not be disturbed by the chancellor unless it
is plainly erroneous. Formerly the conclusion of the
chancellor on such and all other matters of fact brought
with it to this court on appeal a *prima facie* presump-
tion of correctness, which for the purpose of review here
displaced the presumption of correctness which attended
the register's finding before the chancellor, so that this
court would affirm the decree sustaining exceptions to
such finding unless after indulging the presumption
just referred to of the correctness it still appeared here
to be erroneous. The statute now, however, provides
that this court shall give no weight to the decision of the
chancellor upon the facts, (Code, § 3826) ; and from
this it would seem to follow that such finding of the reg-
ister although it has been disallowed or modified by the
chancellor, comes before us on appeal for original re-

view, attended by the same presumption of correctness that waited on it before the chancellor and that it should not be disturbed here unless, that presumption to the contrary notwithstanding, it appears to us to be clearly erroneous. The *second* rule if it may be called a rule rather than an exception to the first rule stated, or, perhaps yet more accurately, an illustration of the scope and limitations of the first rule—is this: When it appears from the report that the register has proceeded upon incorrect principles to the conclusion he reaches and reports, and in consequence his finding is not wholly the result of his consideration of the testimony upon the issue, but is referable in a material degree to a mistake of law or the misapplication of law to the facts before him, his finding carries no presumption of correctness with it before the chancellor, nor brings any such presumption here; and the matter is to be determined *de novo* by the chancellor, on exceptions taken, and again by this court, on appeal, wholly regardless of the conclusion reached and reported by the register.

The findings of the register of the rental values for the years 1894 to 1902, inclusive, during which Armistead had possession of the premises as upon a sale by complainant and for which the company is liable for the fair and reasonable rental value of the lands, fall within the category just stated: They were reached upon incorrect basis of consideration and calculation and result from mistake or misapplication of law.

In the first place, it is fairly inferable from the report that the findings in this connection were to some extent at least based upon a consideration of the amount of rent that could have been secured by farming the lands out to many individual tenants at so much for each mule crop, which, as we have seen, was an improper theory upon which to assess the rents chargeable against the mortgagee. And in addition to that—a consideration which would suffice for the purpose in view in and of itself—it appears from the report that the findings were based upon a consideration of the enhanced rental values of the premises due to permanent improvements

[Pollard *et al.* v. Am. Freehold Land Mgt. Co. of London, Ltd., and
Am. Freehold Land Mgt. Co. of London, Ltd. v. Pollard *et al.* ]

made by the vendee of the mortgagee, and were thus
fixed by the register contrary to the law declared on the
last appeal and contrary to the decree of reference.  It
was found by the register, and the fact is not contro-
verted, that Armistead made improvements during each
of the years 1894 to 1898, inclusive, ranging in value
from $175 to $1,405, and aggregating $3,580.  These
were permanent improvements, of a character to give
additional rental value to the place, not only for the year
in which they were severally made, but as well for every
year after that throughout the period of accounting.
In ascertaining the yearly rental values *without* these
improvements the register first found such values *with*
these improvements and deducted therefrom for each
year the amount the improvements *of that year*—made
in that year—enhanced the rental value for that year,
but he took no account of the augmentation of the rental
value of succeeding years due to the permanent im-
provements of the particular year.  For illustration:
Armistead built a barn and made other improvements
in 1894, all of a total value of $1,015.  The register
found that the rental value of that year with these bet-
terments was $3,500, and that a certain part of this
value for that year was due to the betterments, and this
sum he deducted from the $3,500 and charged the mort-
agee with the balance.  These betterments added a like
sum to the rental value for the next year, 1895, and for
each succeeding year, and having regard to them the reg-
ister found the rental value of the next and each suc-
ceeding year to be $3,500, but he did not deduct from the
rent to be charged the mortgagee that part of the $3,500
which was due to the betterments made in 1894.  The
same method was pursued by him in respect of each of
the other years in which improvements were made; and
in respect of the last four years of the accounting period,
1899, 1900, 1901 and 1902, during which no improve-
ments were made, he charged the mortgagee with the
gross rental value enhanced as it was by all the perma-
nent improvements of the preceding five years, without
any deduction whatever of that portion of the gross
rental value which were referable to the betterments

made by Armistead, and for which the company was not liable at all. The findings of the register of the items of charge as rent for the years 1894 to 1902, inclusive, were, it thus appears, the result of a mistake of law or of a misapplication of the rule of liability declared in the opinion of this court and in the decree of reference; and for that reason the question as to what the mortgagee should be charged as rent for those years was entirely open before the chancellor and is entirely open before us on the evidence adduced on the reference and reproduced, on exceptions taken before the chancellor and now again here.

It would serve no good purpose to discuss the evidence at length in this opinion. Both the register and the chancellor found incidentally that the number of tillable acres of land in the plantation has all along been fifteen hundred, or as much as fifteen hundred. A careful consideration of the whole evidence, with all the light thrown upon it by the exhaustive briefs of counsel, satisfies us of the correctness of that conclusion, that is to say, we are reasonably satisfied from the evidence and without reference to the conclusions in this connection of the register and the chancellor, that apart from the lands cleared by Armistead—about one hundred and seventy-five acres—the place contains fifteen hundred acres of tillable land. It is further clear to us on the evidence that two dollars per acre is a fair and reasonable rental for the lands for each of the years 1894 to 1902, inclusive, not considering the enhancement of its rental value due to betterements made by Armistead during that period, or, in other words, that the complainant should be charged with the sum of three thousand dollars as rent for each of those years as it was charged by the final decree below.

The decree so far as brought in question on the appeal in chief, that of the complainant in the cross-bill, must be affirmed. On the appeal of the complainant in the original bill, the mortgage company, the decree will be modified as indicated in the foregoing opinion, and as modified will be affirmed.